# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**AARON C. WILSON**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201500017**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 26 September 2014.
**Military Judge:** LtCol L.J. Francis, USMC.
**Convening Authority:** Commanding Officer, Marine Corps Air Station Yuma, Yuma, AZ.
**Staff Judge Advocate's Recommendation:** Maj G.T. Funk, USMC.
**For Appellant:** Maj Jeffrey S. Stephens, USMCR.
**For Appellee:** CDR C. Eric Roper, JAGC, USN; LT Ann E. Dingle, JAGC, USN.

**14 July 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, found the appellant guilty, pursuant to his pleas, of one specification each of conspiracy, making a false official statement, and destroying non-military property, and two specifications of larceny, in violation of Articles 81, 107, 109, and 121, Uniform Code of Military Justice, 10 U.S.C.

§§ 881, 907, 909, and 921.  The adjudged sentence included two years' confinement, reduction to pay grade E-1, and a bad-conduct discharge.  The convening authority (CA) approved the sentence as adjudged.  However, pursuant to a pretrial agreement, the CA suspended all confinement in excess of 365 days.

On appeal, the appellant alleges: (1) that his sentence is inappropriately severe and, (2) that the staff judge advocate's recommendation (SJAR) and CA's action erroneously omitted reference to two companion cases.  After careful examination of the record of trial and the pleadings of the parties, we disagree.  The findings and sentence are correct in law and fact, and we find no error materially prejudicial to the substantial rights of the appellant.  Arts. 59(a) and 66(c), UCMJ.

## Background

A motorcyclist, the appellant began riding with the Real Riders Motorcycle Club near Camp Pendleton, California, in May 2010 and joined the club in May of 2011 after returning from a six-month deployment to Afghanistan.  Sergeant (Sgt) Jeremiah Ledesma was also a member of the Real Riders, and Lance Corporal (LCpl) Jovell Nieves joined the club in early 2012.

In July 2012, the appellant learned from Sgt Ledesma and LCpl Nieves that they had stolen a blue 2007 Yamaha R6 motorcycle from a parking lot aboard Camp Pendleton to supply parts for a damaged Yamaha R6 Sgt Ledesma had recently bought.  The appellant failed to report Sgt Ledesma's and LCpl Nieves' theft and began to help plan the theft of a second motorcycle.  LCpl Nieves solicited the appellant's and Sgt Ledesma's assistance in locating and stealing a motorcycle as a source of parts for his new motorcycle.  After LCpl Nieves found a motorcycle similar to his own parked near his barracks, the appellant, Sgt Ledesma, and LCpl Nieves gathered and caravanned to the barracks parking lot after dark.  The appellant and LCpl Nieves lifted the motorcycle from its parking spot into the bed of Sgt Ledesma's pickup truck and strapped it down.  That night, the appellant and LCpl Nieves began removing parts from the stolen motorcycle in Sgt Ledesma's garage.  The next day, the appellant returned to Sgt Ledesma's garage and coached LCpl Nieves as to how to remove parts and in what order, taking the stolen motorcycle down to its frame.  Then the appellant accompanied LCpl Nieves to a motorcycle retail and repair shop to sell unwanted parts.

2

In August, the appellant, Sgt Ledesma, and LCpl Nieves surveyed the parking lots aboard Camp Pendleton, looking for motorcycles similar to their own. The appellant approached covered motorcycles on foot and raised the covers to determine their models. On 13 August 2012, LCpl Nieves texted the appellant, inquiring as to the location of a Yamaha R6 with GYTR[1] they had spotted. The appellant responded, "It was behind the gas station. Mainside I wanna say it was black."[2] Two nights later, Sgt Ledesma and LCpl Nieves stole that motorcycle from a barracks parking lot and took it to a storage unit they rented in town. The appellant was not with Sgt Ledesma and LCpl Nieves for the theft, and he later chided them for stealing the motorcycle without him.[3]

The motorcycle Sgt Ledesma and LCpl Nieves stole on 15 August 2012 was equipped with a LoJack anti-theft device, and Sgt Ledesma and LCpl Nieves were soon arrested. The appellant transferred to Marine Corps Air Station (MCAS) Yuma, Arizona on 14 September 2012, but he was called back to the Camp Pendleton Criminal Investigation Division on 1 October 2012 for an interview. The appellant went into great detail, inculpating his two co-conspirators while attempting to portray himself as a disapproving observer. The Marine Corps criminal investigator asked the appellant, "[a]re you involved in the theft of motorcycles . . . ?" The appellant replied, "[n]o."[4] The appellant initialed next to his false response to Agent Hansen's question and swore to the truthfulness of his statement.

There was no evidence that the appellant personally profited from the theft of the motorcycles. He received neither motorcycle parts nor cash from the sale of motorcycle parts.

**Sentence Severity**

The appellant argues that his sentence to a bad-conduct discharge and confinement for two years, even with the second year of confinement suspended per the pretrial agreement, was inappropriately severe given his limited role in the conspiracy

---

[1] GYTR is an aftermarket exhaust system for motorcycles. See Prosecution Exhibit 10 at 4.

[2] PE 12 at 10.

[3] Hours after the 15 August 2012 theft, appellant learned about it from LCpl Nieves. The appellant reacted with the following text to LCpl Nieves: "Y'all . . . . went shoppin without me." *Id*. at 12.

[4] *Id.* at 7.

3

to steal, dismantle, and sell motorcycles and his eight years of service in the Marine Corps. We disagree.

In accordance with Article 66(c), UCMJ, this court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). That analysis requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (internal quotation marks and citation omitted). Factors include "the circumstances surrounding the offense, [the accused's] acceptance or lack of acceptance of responsibility for his offense, and his prior record." *United States v. Aurich*, 31 M.J. 95, 97 n.* (C.M.A. 1990).

We have reviewed the entire record, and we are mindful that the appellant was a successful Marine for six years, including two deployments to Afghanistan, before the events at issue. We also considered the favorable testimony of his supervisor at the barracks at MCAS Yuma. Although he initially lied to investigators about his lack of involvement in motorcycle theft, the appellant eventually took responsibility for his actions before the military judge and the CA.

The appellant's failure to reap any financial benefit from this conspiracy does little to mitigate his deliberate and sustained misconduct over the course of at least a month. When the appellant learned that two members of his motorcycle club had stolen a fellow Marine's motorcycle, he reacted without concern or sympathy for that first victim. Instead, the appellant used his Marine Corps leadership experience to mentor a junior Marine, LCpl Nieves, in the identification, theft, dismantling, poaching, and sale of parts from other Marines' motorcycles. After actively participating in the theft of a second motorcycle, the appellant expressed disappointment when he realized he had missed the theft of the third motorcycle.

The appellant's course of misconduct continued far too long to be characterized as a momentary lapse in judgment. Furthermore, while awaiting the consequences of his misconduct in Camp Pendleton, the appellant received nonjudicial punishment

4

for driving aboard MCAS Yuma with a blood alcohol content of .19.

Each of the five specifications to which the appellant pleaded guilty carried a maximum sentence of five years. The appellant is benefiting from a pretrial agreement and serving one year of confinement for all five of those specifications. Considering the facts of the case and the appellant's record, as well as the mitigating factors presented, the sentence is not inappropriate.

**Failure to Note Companion Cases**

The appellant alleges CA error in that the SJAR and CA's action both fail to mention two companion cases of the appellant's co-conspirators.

Section 0151a(5) of the Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7F (26 June 2012), directs CAs who order separate trials of companion cases to indicate such an order in the action on the record in each companion case. This court has interpreted the requirement to apply only to courts-martial convened by the same CA. *United States v. Ortiz*, 52 M.J. 739, 741 (N.M.Ct.Crim.App. 2000) (citing *United States v. Swan*, 43 M.J. 788, 790 (N.M.Ct.Crim.App. 1995)). The burden to demonstrate that the same CA convened the courts-martial that tried potential companion cases lies with the appellant. *Id.*

The commanding officer of MCAS Yuma was the CA in this case, as appellant was assigned to MCAS Yuma at the time of preferral of charges. The conduct in this case did not occur at MCAS Yuma, and neither co-conspirator was assigned to MCAS Yuma. Absent evidence from the appellant that the commanding officer of MCAS Yuma convened the courts-martial against Sgt Ledesma and LCpl Nieves, we reject this second assignment of error.

**Conclusion**

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court