# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, T.H. CAMPBELL**
Appellate Military Judges

### UNITED STATES OF AMERICA

v.

### HOWARD GOMEZ
### CORPORAL (E-4), U.S. MARINE CORPS

### NMCCA 201500195
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 19 March 2015.
**Military Judge:** Maj M.D. Libretto, USMC.
**Convening Authority:** Commanding General, 2d Marine Division, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation:** LtCol K.S. Woodard, USMC.
**For Appellant:** CDR Sabatino F. Leo, JAGC, USN.
**For Appellee:** Capt Diane L. Karr, JAGC, USN; LCDR Justin C. Henderson, JAGC, USN; Maj Suzanne Dempsey, USMC.

**10 November 2015**

```
-------------------------------------------------------
              OPINION OF THE COURT
-------------------------------------------------------
```

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial composed of a military judge convicted the appellant, pursuant to his pleas, of one specification of conspiracy, three specifications of wrongful disposition of military property, one specification of larceny of military property, and one specification of housebreaking, in violation of Articles 81, 108, 121, and 130 Uniform Code of

Military Justice, 10 U.S.C. §§ 881, 908, 921, and 930.  The military judge sentenced the appellant to fifty-four months of confinement, reduction to pay grade E-1, a $30,000.00 fine, and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged, but suspended all confinement in excess of four years for the period of confinement served plus six months thereafter, in accordance with the pretrial agreement (PTA).

The appellant now raises two assignments of error.  First, the appellant asserts that his sentence is disparately severe when compared to the sentence of one of his co-conspirators.  Second, the appellant asserts the court-martial promulgating order does not accurately reflect his charges and pleas.  Finding merit in his second assignment of error, we order corrective action in our decretal paragraph.  We conclude the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

**Background**

In the summer of 2014, three Marines -- the appellant, Lance Corporal (LCpl) Roberts and Private First Class (PFC) Smith -- conspired to steal military equipment from the 2D Marine Special Operations Battalion (2D MSOB) supply warehouse at Camp Lejeune, North Carolina.  The object of the conspiracy was to sell the equipment to civilians for profit and each member of the conspiracy had a unique role.

The appellant and PFC Smith were warehouse clerks at the 2D Reconnaissance Battalion warehouse, when the appellant discovered that PFC Smith was stealing and selling military equipment.  The appellant then crafted a plan and told PFC Smith "that [he] had someone working [2D MSOB] in the supply warehouse that would be willing to steal gear and give [it] to [PFC Smith] to sell[.]"[1]  The appellant's contact in the 2D MSOB warehouse was LCpl Roberts, his former roommate.  Following his discussion with PFC Smith, the appellant introduced LCpl Roberts and PFC Smith to each other.

Together the three Marines decided they would steal equipment from the 2D MSOB warehouse, sell it, and split the proceeds.  The appellant assumed responsibility for coordinating

---

[1] Prosecution Exhibit 7 at 1.

the conspiracy internally and facilitating communication on what items to steal.  He coordinated with his co-conspirators on pick-up times and locations, and ensured LCpl Roberts received payment for his part in the operation.  The appellant received approximately $30,000.00 for his contributions to the conspiracy.

LCpl Roberts received approximately $20,000.00 for stealing the military equipment from the 2D MSOB warehouse and giving it to PFC Smith.  PFC Smith received approximately $30,000.00 for storing the stolen property at his residence, locating buyers, and executing the sales transaction.

The appellant and LCpl Roberts were charged at separate courts-marital convened by different CAs and presided over by different military judges.[2]  A military judge sentenced LCpl Roberts to reduction to pay grade E-1, total forfeiture of pay and allowances, confinement for thirty-six months, and a dishonorable discharge.[3]  The terms of LCpl Roberts' PTA, however, suspended six months of his confinement, reducing his unsuspended amount of confinement to thirty months.

**Sentence Disparity**

The appellant now argues that his case is disparately severe when compared to LCpl Roberts' sentence.  He requests that we set aside his $30,000.00 fine and affirm only 30 months of the approved confinement, which would result in a sentence more closely aligned with that of LCpl Roberts.  We decline to do so.

We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Art. 66(c), UCMJ.  Sentence appropriateness is reviewed *de novo*, *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006), and involves the judicial function of assuring that justice is done and that the appellant gets the punishment he deserves, *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).  As part of that review, we give "'individualized consideration' of the particular appellant 'on the basis of the

---

[2] The record does not indicate what sentence was approved by the CA in LCpl Roberts' case.

[3] The record does not inform us as to the fate of PFC Smith, but indicates that civilian authorities were investigating him for his role in the conspiracy.

3

nature and seriousness of the offense and the character of the offender,'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (additional quotations omitted), which generally should be determined without reference or comparison to sentences in other cases, *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985). We are not required to engage in comparison of specific cases "'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283) (additional citation omitted). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

When seeking relief for a disparately severe sentence, the appellant "bears the burden of demonstrating that any cited cases are 'closely-related' to his or her case and that the sentences are 'highly disparate.'" *Lacy,* 50 M.J. at 288. If the appellant shows both that his case is "closely related" and his sentence is "highly disparate," then the burden shifts to the Government to show there is "a rational basis for the disparity." *Id.; see also, United States v. Durant*, 55 M.J. 258, 262-63 (C.A.A.F. 2001). Cases are "closely related" when they "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design," *United States v. Kelly*, 40 M.J. 558, 570 (N.M.Ct.Crim.App. 1994). This includes "co-actors involved in a common crime . . . [or] servicemembers involved in a common or parallel scheme." *Lacy*, 50 M.J. at 288.

The appellant and LCpl Roberts were co-conspirators. They participated in a conspiracy to carry out a common crime -- stealing military equipment from the 2D MSOB warehouse and selling it to civilians. They each assumed different roles, but played an active part in the conspiracy, and both profited from their contributions to the conspiracy. And while the record does not include LCpl Roberts' charges, it does show that both LCpl Roberts and the appellant were convicted at general courts-martial. Therefore, we find the appellant's case is closely related to LCpl Roberts' case.

We also find the appellant has demonstrated that his sentence is highly disparate when compared to that of LCpl Roberts. Recognizing there will be some disparity amongst sentences in the military justice system, a disparity between

4

sentences in closely related cases is considered "highly disparate" and may warrant relief if the disparity so great as to "exceed relative uniformity or when it rises to the level of an obvious miscarriage of justice or an abuse of discretion." *United States v. Swan*, 43 M.J. 788, 792 (N.M.Ct.Crim.App. 1995)) (internal quotations and citation omitted).  The disparity between LCpl Roberts' sentence and the appellant's sentence exceeds relative uniformity.  LCpl Roberts and the appellant both pleaded guilty at a general court-martial.  They entered into PTAs with different CAs, and different military judges adjudged their sentences.  It appears the appellant received 18 more months of confinement than LCpl Roberts, as well as a $30,000.00 fine, an amount equal to his unjust enrichment from the conspiracy.  In contrast, LCpl Roberts was not fined, despite receiving $20,000.00 from the conspiracy.  And while the appellant did not receive an adjudged forfeiture like LCpl Roberts, the confinement and punitive discharges in both cases triggered automatic forfeitures under Article 58b, UCMJ.

The Government cites *United States v. Taylor*, No. 201300195, 2014 CCA LEXIS 150, unpublished op. (N.M.Ct.Crim.App. 6 Mar 2014), *rev. denied*, 73 M.J. 285 (C.A.A.F. 2014), as persuasive authority to support their position that the appellant's sentence is not highly disparate when compared to LCpl Roberts' sentence.  However, the sentence disparity in the appellant's case is significantly more severe that the sentence disparity in *Taylor*.  The appellant in *Taylor* was fined $17,000.00 (equal to his unjust enrichment) and his co-conspirator was fined $11,000.00 (half of the amount of his unjust enrichment).  *Id.* at 5-6.  This is a difference of $6,000 and a fifty percent difference when comparing the relative amounts of their unjust enrichment.  Here, there is a $30,000.00 difference in fines and a one-hundred percent difference in unjust enrichment amounts.  Furthermore, in *Taylor* the co-conspirator's "sentence was slightly more severe than the appellant's in terms of confinement."  *Id.* at 6.  Here, in addition to receiving no fine, LCpl Roberts also received 18 months less confinement than did the appellant.  Mindful that co-conspirators are not entitled to equal sentences, *Durant*, 55 M.J. at 260, we nonetheless find appellant's sentence is highly disparate when compared to LCpl Roberts' sentence.

We next consider whether the Government has met its burden to show a rational basis for the disparity and find that it has. The appellant was the only noncommissioned officer and the senior member of the conspiracy.  Moreover, he recognized the opportunity to steal equipment from the 2D MSOB warehouse,

5

concocted the criminal plan and brought junior Marines together in order to turn that plan into reality. Furthermore, all communications between LCpl Roberts (the supplier) and PFC Smith (the seller) went through the appellant, who, in turn was responsible for ensuring LCpl Roberts was paid a share of the profits. And while the appellant relied upon his junior Marines to steal, store, and sell the military equipment, he never relinquished his role as the central point of coordination, collecting $10,000.00 more than LCpl Roberts as a result. These reasons constitute a rational basis for the sentence disparity. *Cf. United States v. Odom*, 2015 CCA LEXIS 361 at *6-7, unpublished op. (N.M.Ct.Crim.App. 31 Aug 2015) (*per curiam*) (finding a rational basis for the sentence disparity when the senior Marine received a more severe sentence than his co-conspirators).

### Court-Martial Promulgating Order

Although Charge I originally contained three specifications of conspiracy, the military judge consolidated them into one, to which the appellant then pleaded guilty. The promulgating order fails to reflect that consolidation and single plea. This was error, but harmless. The appellant, however, is entitled to a promulgating order that correctly reflects the results of his proceeding. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998).

### Conclusion

The findings and the sentence are affirmed. The supplemental court-martial promulgating order shall accurately reflect the consolidation of the specifications under Charge I and the appellant's plea thereto.

For the Court



R.H. TROIDL
Clerk of Court

6